**DUANE MORRIS LLP**
By:    Anthony J. Costantini
        E-mail:ajcostantini@duanemorris.com
        Suzan Jo
        E-mail:sjo@duanemorris.com
        Mary C. Pennisi
        Email: mcpennisi@duanemorris.com
1540 Broadway
New York, NY 10036-4086
Telephone: +1 212 692 1000
Fax: +1 212 692 1020
Attorneys for Plaintiff
VR Global Partners, LP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| VR Global Partners, LP, | : |
|             Plaintiff, | : |
| | : |
|         v. | :    CIVIL ACTION NO. |
| | :    11-CV-08817 (TPG) (KNF) |
| The Republic of Argentina, | : |
|            Defendant. | : |
| | : |

---

## THIRD AMENDED COMPLAINT

Plaintiff, VR Global Partners, LP ("VR"), by its undersigned counsel, as and for its

Complaint against Defendant Republic of Argentina (the "Republic"), alleges as follows:

## NATURE OF THE ACTION

1.    This is a breach of contract action arising from the Republic's failure to make
contractually-mandated principal and interest payments on certain bonds issued by the
Republic and held by VR.

2.    VR acquired a certain bond, ISIN No. XS0086333472, issued by the Republic pursuant to
a Fiscal Agency Agreement, dated October 19, 1994 ("1994 Fiscal Agency Agreement"),
in the principal amount of € 1,759,000.00. A copy of the 1994 Fiscal Agency Agreement
is annexed hereto as Exhibit A.

3.   VR acquired a certain bond, ISIN No. US040114AN02, issued by the Republic pursuant to the 1994 Fiscal Agency Agreement, in the principal amount of $928,000.00.

4.   VR acquired a certain bond, ISIN No. US040114AR16, issued by the Republic pursuant to the 1994 Fiscal Agency Agreement, in the principal amount of $655,000.00.

5.   VR acquired a certain bond, ISIN No. US040114AV28, issued by the Republic pursuant to the 1994 Fiscal Agency Agreement, in the principal amount of $81,000.00.

6.   VR acquired a certain bond, ISIN No. US040114BE93, issued by the Republic pursuant to the 1994 Fiscal Agency Agreement, in the principal amount of $593,000.00.

7.   VR acquired a certain bond, ISIN No. US040114GF14, issued by the Republic pursuant to the 1994 Fiscal Agency Agreement, in the principal amount of $4,010,000.00.

8.   VR acquired a certain bond, ISIN No. US040114GG96, issued by the Republic pursuant to the 1994 Fiscal Agency Agreement, in the principal amount of $813,978.75.

9.   VR acquired a certain bond, ISIN No. US040114GH79, issued by the Republic pursuant to the 1994 Fiscal Agency Agreement, in the principal amount of $1,719,858.00.

10.   VR acquired a certain bond, ISIN No. DE0001325017, issued by the Republic pursuant to a subscription agreement, dated June 13, 1996 ("June 1996 Subscription Agreement"), in the principal amount of 237,000.00 Deutschmarks.  A copy of the June 1996 Subscription Agreement is attached hereto as Exhibit B.

11.   VR acquired a certain bond, ISIN No. DE0002483203, issued by the Republic pursuant to an offering circular, dated July 14, 1998 (the "July 14, 1998 Offering Circular"), in the principal amount of € 790,485.38.  A copy of the July 14, 1998 Offering Circular is attached hereto as Exhibit C.

12.   VR acquired a certain bond, ISIN No. DE0002923851, issued by the Republic pursuant to an offering circular, dated February 26, 1999 (the "February 26, 1999 Offering Circular"), in the principal amount of € 788,000.00.  A copy of the February 26, 1999 Offering Circular is attached hereto as Exhibit D.

13.   VR acquired a certain bond, ISIN No. DE0002966900, issued by the Republic pursuant to an offering circular, dated April 21, 1999 (the "April 21, 1999 Offering Circular"), in the principal amount of € 100,000.00.  A copy of the April 21, 1999 Offering Circular is attached hereto as Exhibit E.

14.   VR acquired a certain bond, ISIN No. DE0002998952, issued by the Republic pursuant to an offering circular, dated April 26, 1999 (the "April 26, 1999 Offering Circular"), in the principal amount of € 619,000.00.  A copy of the April 26, 1999 Offering Circular is attached hereto as Exhibit F.

15.   VR acquired a certain bond, ISIN No. DE0003045357, issued by the Republic pursuant to an offering circular, dated June 4, 1999 (the "June 4, 1999 Offering Circular"), in the principal amount of € 1,373,000.00. A copy of the June 4, 1999 Offering Circular is attached hereto as Exhibit G.

16.   VR acquired a certain bond, ISIN No. DE0004509005, issued by the Republic pursuant to an offering circular, dated January 26, 2000 as amended February 29, 2000 (the "January 26, 2000 Offering Circular"), in the principal amount of € 2,084,000.00. A copy of the January 26, 2000 Offering Circular is attached hereto as Exhibit H.

17.   VR acquired a certain bond, ISIN No. DE0001348100, issued by the Republic pursuant to a prospectus, dated November 13, 1996 (the "November 13, 1996 Prospectus"), in the principal amount of € 510,000.00. A copy of the November 13, 1996 Prospectus is attached hereto as Exhibit I. The relevant sections of the November 13, 1996 Prospectus have been translated into English and are attached hereto as Exhibit J.

18.   VR acquired a certain bond, ISIN No. DE0001319507, issued by the Republic pursuant to a prospectus, dated April 10, 1996 (the "April 10, 1996 Prospectus"), in the principal amount of € 110,000.00. A copy of the April 10, 1996 Prospectus is attached hereto as Exhibit K. The relevant sections of the April 10, 1996 Prospectus have been translated into English and are attached hereto as Exhibit L.

19.   VR acquired a certain bond, ISIN No. DE0005450258, issued by the Republic pursuant to an offering circular, dated September 7, 2000 as amended October 19, 2000 (the "September 7, 2000 Offering Circular"), in the principal amount of € 520,000.00. A copy of the September 7, 2000 Offering Circular is attached hereto as Exhibit M.

20.   VR acquired a certain bond, ISIN No. DE0001767101, issued by the Republic pursuant to a subscription agreement, dated November 17, 1998 ("November 1998 Subscription Agreement"), in the principal amount of 1,498,000.00 Deutschmarks. A copy of the November 1998 Subscription Agreement is attached hereto as Exhibit N.

21.   VR acquired a certain bond, ISIN No. DE0001954907, issued by the Republic pursuant to an offering circular, dated October 30, 1997 (the "October 30, 1997 Offering Circular"), in the principal amount of 2,922,000.00 Deutschmarks. A copy of the October 30, 1997 Offering Circular is attached hereto as Exhibit O.

22.   A record of VR's holdings of Argentine bonds, including those referenced above, is attached hereto as Exhibit P.

### Jurisdiction

23.   The Republic is a foreign state as defined in 28 U.S.C. § 1603(a).

24.   This Court has jurisdiction pursuant to 28 U.S.C. § 1330. In addition, this Court has personal jurisdiction over the Republic because the Republic regularly conducts business in New York.

25.     Venue is proper in this district by agreement of the parties and pursuant to 28 U.S.C. §
        1391.


## COUNT ONE

26.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1-9 and 23 -
        26 as if set forth here at length.

27.     As set forth above, VR acquired certain bonds issued by the Republic pursuant to the
        1994 Fiscal Agency Agreement (the "1994 Bonds") and continues to own those bonds.

28.     Pursuant to Section 22 of the 1994 Fiscal Agency Agreement, The Republic (i) appointed
        Banco de la Nacion Argentina as its agent for service of process, (ii) agreed to submit to
        the jurisdiction of this Court, and (iii) agreed to waive any claim of immunity, including,
        but not limited to, sovereign immunity.

29.     Pursuant to Section 12 of the 1994 Fiscal Agency Agreement, the following, *inter alia*,
        are defined as "Events of Default:"

              (a) Non-Payment: the Republic fails to pay any principal of any of
              the Securities of such Series when due and payable or fails to pay
              any interest on any of the Securities of such Series when due and
              payable and such failure continues for a period of 30 days; or

              ....

              (d) Moratorium: a moratorium on the payment of principal of, or
              interest on, the Public External Indebtedness of the Republic shall
              be declared by the Republic...

30.     Section 12 of the 1994 Fiscal Agency Agreement further provides that following either of
        the foregoing Events of Default, a note holder, *i.e.*, plaintiff VR, may give the Republic
        written notice and declare "the principal amount of such Securities by it to be due and
        payable immediately," together with all accrued interest.

31.     In or about December 2001, the Republic declared a moratorium on the payment of
        principal and interest with respect to all of its foreign debt, including all payments due
        under the 1994 Bonds.

32.     By reason of the foregoing, there has been an Event of Default on the 1994 Bonds, and
        the Republic is in breach of its obligations under the 1994 Fiscal Agency Agreement.

33.     In accordance with Section 12 of the 1994 Fiscal Agency Agreement, by letter dated
        December 28, 2011, plaintiff VR provided the Republic's Fiscal Agent, Bankers Trust
        Company, with written notice that it was declaring the principal and interest on the 1994
        Bonds to be due and payable immediately.

34.   Notwithstanding, since December 2001, the Republic has failed to make any payment of principal or interest on the 1994 Bonds held by VR.

35.   By reason of the foregoing, the Republic has breached its contractual obligations to plaintiff VR and is liable for damages in an amount to be determined at trial, plus interest.

## COUNT TWO

36.   Plaintiff repeats and realleges each of the allegations contained in paragraphs 1, 10, 11, and 23-26 as if set forth here at length.

37.   As set forth above, VR acquired a certain bond issued by the Republic pursuant to the June 1996 Subscription Agreement (the "1996 Bond") and continues to own that bond.

38.   Pursuant to subsection 5 of Article 14 of the June 1996 Subscription Agreement, the Republic agreed to waive any claim of immunity, including, but not limited to, sovereign immunity.

39.   Pursuant to Section 8 of the Conditions of Issue of the June 1996 Subscription Agreement, the following, *inter alia*, are defined as "Events of Default:"

> (a) Non-Payment: the Republic fails to pay any principal of any of the Bonds when due and payable or fails to pay any interest on any of the Bonds when due and payable and such failure continues for a period of 30 days; or
>
> ....
>
> (d) Moratorium: a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic of Argentina shall be proposed or declared by the Republic of Argentina...

40.   Section 8 of the Conditions of Issue of the June 1996 Subscription Agreement further provides that following either of the foregoing Events of Default, the holder of any Bond, *i.e.*, plaintiff VR, may give the Republic's Principal Paying Agent, CS First Boston, written notice and declare "such Bond to be immediately due and payable together with accrued interest thereon, as of the date on which such notice is received by the Principal Paying Agent."

41.   In or about December 2001, the Republic declared a moratorium on the payment of principal and interest with respect to all of its foreign debt, including all payments due under the 1996 Bond.

42.   By reason of the foregoing, there has been an Event of Default on the 1996 Bond, and the Republic is in breach of its obligations under the June 1996 Subscription Agreement.

43. In accordance with Section 8 of the Conditions of Issue of the June 1996 Subscription Agreement, by letter dated December 28, 2011, plaintiff VR provided the Republic's Principal Paying Agent with written notice that it was declaring the principal and interest on the 1996 Bond to be due and payable immediately.

44. Notwithstanding, since December 2001, the Republic has failed to make any payment of principal or interest on the 1996 Bond held by VR.

45. By reason of the foregoing, the Republic has breached its contractual obligations to plaintiff VR and is liable for damages in an amount to be determined at trial, plus interest.

## COUNT THREE

46. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1, 11, and 22-25 as if set forth here at length.

47. As set forth above, VR acquired a certain bond issued by the Republic pursuant to the July 14, 1998 Offering Circular (the "July 14, 1998 Bond") and continues to own that bond.

48. Pursuant to subsection 4 of Section 13 of the Terms and Conditions of the Bonds of the July 14, 1998 Offering Circular, the Republic agreed to waive any claim of immunity, including, but not limited to, sovereign immunity.

49. Pursuant to subsection 1 of Section 10 of the Terms and Conditions of the Bonds of the July 14, 1998 Offering Circular, the following, *inter alia*, are defined as "Events of Default:"

> (a) Non-Payment: the Republic fails to pay any principal of any of the Bonds when due and payable or fails to pay any interest on any of the Bonds when due and payable and such failure continues for a period of 30 days; or
>
> ....
>
> (d) Moratorium: a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic of Argentina shall be proposed or declared by the Republic of Argentina...

50. Section 10 of the Terms and Conditions of the Bonds of the July 14, 1998 Offering Circular further provides that following either of the foregoing Events of Default, the holder of any Bond, *i.e.*, plaintiff VR, may give the Republic's Principal Paying Agent, Deutsche Bank Aktiengesellschaft, written notice and declare "such Bond to be immediately due and payable together with accrued interest thereon, as of the date on which such notice is received by the Principal Paying Agent."

51.   In or about December 2001, the Republic declared a moratorium on the payment of principal and interest with respect to all of its foreign debt, including all payments due under the July 14, 1998 Bonds and has since failed to pay any interest on the July 14, 1998 Bond when due and payable, and such failure continued for a period of 30 days.

52.   By reason of the foregoing, there has been an Event of Default on the July 14, 1998 Bond, and the Republic is in breach of its obligations under the July 14, 1998 Offering Circular.

53.   In accordance with Section 10 of the Terms and Conditions of the Bonds of the July 14, 1998 Offering Circular, by letter dated December 28, 2011, plaintiff VR provided the Republic's Principal Paying Agent with written notice that it was declaring the principal and interest on the July 14, 1998 Bond to be due and payable immediately.

54.   Notwithstanding, since December 2001, the Republic has failed to make any payment of principal or interest on the July 14, 1998 Bond held by VR.

55.   By reason of the foregoing, the Republic has breached its contractual obligations to plaintiff VR and is liable for damages in an amount to be determined at trial, plus interest.

## COUNT FOUR

56.   Plaintiff repeats and realleges each of the allegations contained in paragraphs 1, 12 and 22-25 as if set forth here at length.

57.   As set forth above, VR acquired a certain bond issued by the Republic pursuant to the February 26, 1999 Offering Circular (the "February 26, 1999 Bond") and continues to own that bond.

58.   Pursuant to subsection 4 of Section 12 of the Terms and Conditions of the Bonds of the February 26, 1999 Offering Circular, the Republic agreed to waive any claim of immunity, including, but not limited to, sovereign immunity.

59.   Pursuant to subsection 1 of Section 9 of the Terms and Conditions of the Bonds of the February 26, 1999 Offering Circular, the following, *inter alia*, are defined as "Events of Default:"

> (a) Non-Payment: the Republic fails to pay any principal of any of the Bonds when due and payable or fails to pay any interest on any of the Bonds when due and payable and such failure continues for a period of 30 days; or
>
> ....
>
> (d) Moratorium: a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic of Argentina shall be proposed or declared by the Republic of Argentina...

60.   Section 9 of the Terms and Conditions of the Bonds of the February 26, 1999 Offering Circular further provides that following either of the foregoing Events of Default, the holder of any Bond, *i.e.*, plaintiff VR, may give the Republic's Paying Agent, The Chase Manhattan Bank, written notice and declare "such Bond to be immediately due and payable together with accrued interest thereon, as of the date on which such notice is received by the Paying Agent."

61.   In or about December 2001, the Republic declared a moratorium on the payment of principal and interest with respect to all of its foreign debt, including all payments due under the February 26, 1999 Bond and has since failed to pay any interest on the February 26, 1999 Bond when due and payable, and such failure continued for a period of 30 days.

62.   By reason of the foregoing, there has been an Event of Default on the February 26, 1999 Bond, and the Republic is in breach of its obligations under the February 26, 1999 Offering Circular.

63.   In accordance with Section 9 of the Terms and Conditions of the Bonds of the February 26, 1999 Offering Circular, by letter dated December 28, 2011, plaintiff VR provided the Republic's Paying Agent with written notice that it was declaring the principal and interest on the February 26, 1999 Bond to be due and payable immediately.

64.   Notwithstanding, since December 2001, the Republic has failed to make any payment of principal or interest on the February 26, 1999 Bond held by VR.

65.   By reason of the foregoing, the Republic has breached its contractual obligations to plaintiff VR and is liable for damages in an amount to be determined at trial, plus interest.

## COUNT FIVE

66.   Plaintiff repeats and realleges each of the allegations contained in paragraphs 1, 13, and 22-25 as if set forth here at length.

67.   As set forth above, VR acquired a certain bond issued by the Republic pursuant to the April 21, 1999 Offering Circular (the "April 21, 1999 Bond") and continues to own that bond.

68.   Pursuant to subsection 4 of Section 12 of the Terms and Conditions of the Bonds of the April 21, 1999 Offering Circular, the Republic agreed to waive any claim of immunity, including, but not limited to, sovereign immunity.

69.   Pursuant to subsection 1 of Section 9 of the Terms and Conditions of the Bonds of the April 21, 1999 Offering Circular, the following, *inter alia*, are defined as "Events of Default:"

     (a) Non-Payment: the Republic fails to pay any principal of any of the Bonds when due and payable or fails to pay any interest on any

> of the Bonds when due and payable and such failure continues for
> a period of 30 days; or
>
> ....
>
> (d) Moratorium: a moratorium on the payment of principal of, or
> interest on, the Public External Indebtedness of the Republic of
> Argentina shall be proposed or declared by the Republic of
> Argentina...

70.   Section 9 of the Terms and Conditions of the Bonds of the April 21, 1999 Offering
      Circular further provides that following either of the foregoing Events of Default, the
      holder of any Bond, *i.e.*, plaintiff VR, may give the Republic's Paying Agent, The Chase
      Manhattan Bank, written notice and declare "such Bond to be immediately due and
      payable together with accrued interest thereon, as of the date on which such notice is
      received by the Paying Agent."

71.   In or about December 2001, the Republic declared a moratorium on the payment of
      principal and interest with respect to all of its foreign debt, including all payments due
      under the April 21, 1999 Bond and has since failed to pay any interest on the April 21,
      1999 Bond when due and payable, and such failure continued for a period of 30 days.

72.   By reason of the foregoing, there has been an Event of Default on the April 21, 1999
      Bond, and the Republic is in breach of its obligations under the April 21, 1999 Offering
      Circular.

73.   In accordance with Section 9 of the Terms and Conditions of the Bonds of the April 21,
      1999 Offering Circular, by letter dated December 28, 2011, plaintiff VR provided the
      Republic's Paying Agent with written notice that it was declaring the principal and
      interest on the April 21, 1999 Bond to be due and payable immediately.

74.   Notwithstanding, since December 2001, the Republic has failed to make any payment of
      principal or interest on the April 21, 1999 Bond held by VR.

75.   By reason of the foregoing, the Republic has breached its contractual obligations to
      plaintiff VR and is liable for damages in an amount to be determined at trial, plus interest.

## COUNT SIX

76.   Plaintiff repeats and realleges each of the allegations contained in paragraphs 1, 14, and
      22-25 as if set forth here at length.

77.   As set forth above, VR acquired a certain bond issued by the Republic pursuant to the
      April 26, 1999 Offering Circular (the "April 26, 1999 Bond") and continues to own that
      bond.

78. Pursuant to subsection 3 of Section 11 of the Terms and Conditions of the Bonds of the April 26, 1999 Offering Circular, the Republic agreed to waive any claim of immunity, including, but not limited to, sovereign immunity.

79. Pursuant to subsection 1 of Section 8 of the Terms and Conditions of the Bonds of the April 26, 1999 Offering Circular, the following, *inter alia*, are defined as "Events of Default:"

> (a) Non-Payment: the Republic fails to pay any principal of any of the Bonds when due and payable or fails to pay any interest on any of the Bonds when due and payable and such failure continues for a period of 30 days; or

> ....

> (d) Moratorium: a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic of Argentina shall be proposed or declared by the Republic of Argentina...

80. Section 8 of the Terms and Conditions of the Bonds of the April 26, 1999 Offering Circular further provides that following either of the foregoing Events of Default, the holder of any Bond, *i.e.*, plaintiff VR, may give the Republic's Principal Paying Agent, Deutsche Bank Aktiengesellschaft, written notice and declare "such Bond to be immediately due and payable together with accrued interest thereon, as of the date on which such notice is received by the Principal Paying Agent."

81. In or about December 2001, the Republic declared a moratorium on the payment of principal and interest with respect to all of its foreign debt, including all payments due under the April 26, 1999 Bond and has since failed to pay any interest on the April 26, 1999 Bond when due and payable, and such failure continued for a period of 30 days.

82. By reason of the foregoing, there has been an Event of Default on the April 26, 1999 Bond, and the Republic is in breach of its obligations under the April 26, 1999 Offering Circular.

83. In accordance with Section 8 of the Terms and Conditions of the Bonds of the April 26, 1999 Offering Circular, by letter dated December 28, 2011, plaintiff VR provided the Republic's Principal Paying Agent with written notice that it was declaring the principal and interest on the April 26, 1999 Bond to be due and payable immediately.

84. Notwithstanding, since December 2001, the Republic has failed to make any payment of principal or interest on the April 26, 1999 Bond held by VR.

85. By reason of the foregoing, the Republic has breached its contractual obligations to plaintiff VR and is liable for damages in an amount to be determined at trial, plus interest.

## COUNT SEVEN

86.    Plaintiff repeats and realleges each of the allegations contained in paragraphs 1, 15, and 22-25 as if set forth here at length.

87.    As set forth above, VR acquired a certain bond issued by the Republic pursuant to the June 4, 1999 Offering Circular (the "June 4, 1999 Bond") and continues to own that bond.

88.    Pursuant to subsection 3 of Section 11 of the Terms and Conditions of the Bonds of the June 4, 1999 Offering Circular, the Republic agreed to waive any claim of immunity, including, but not limited to, sovereign immunity.

89.    Pursuant to subsection 1 of Section 8 of the Terms and Conditions of the Bonds of the June 4, 1999 Offering Circular, the following, *inter alia*, are defined as "Events of Default:"

> (a) Non-Payment: the Republic fails to pay any principal of any of the Bonds when due and payable or fails to pay any interest on any of the Bonds when due and payable and such failure continues for a period of 30 days; or
>
> ....
>
> (d) Moratorium: a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic of Argentina shall be proposed or declared by the Republic of Argentina...

90.    Section 8 of the Terms and Conditions of the Bonds of the June 4, 1999 Offering Circular further provides that following either of the foregoing Events of Default, the holder of any Bond, *i.e.*, plaintiff VR, may give the Republic's Principal Paying Agent, Deutsche Bank Aktiengesellschaft, written notice and declare "such Bond to be immediately due and payable together with accrued interest thereon, as of the date on which such notice is received by the Principal Paying Agent."

91.    In or about December 2001, the Republic declared a moratorium on the payment of principal and interest with respect to all of its foreign debt, including all payments due under the June 4, 1999 Bond and has since failed to pay any interest on the June 4, 1999 Bond when due and payable, and such failure continued for a period of 30 days.

92.    By reason of the foregoing, there has been an Event of Default on the June 4, 1999 Bond, and the Republic is in breach of its obligations under the June 4, 1999 Offering Circular.

93.    In accordance with Section 8 of the Terms and Conditions of the Bonds of the June 4, 1999 Offering Circular, by letter dated December 28, 2011, plaintiff VR provided the Republic's Principal Paying Agent with written notice that it was declaring the principal and interest on the June 4, 1999 Bond to be due and payable immediately.

94. Notwithstanding, since December 2001, the Republic has failed to make any payment of principal or interest on the June 4, 1999 Bond held by VR.

95. By reason of the foregoing, the Republic has breached its contractual obligations to plaintiff VR and is liable for damages in an amount to be determined at trial, plus interest.

## COUNT EIGHT

96. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1, 16, and 22-25 as if set forth here at length.

97. As set forth above, VR acquired a certain bond issued by the Republic pursuant to the January 26, 2000 Offering Circular (the "January 26, 2000 Bond") and continues to own that bond.

98. Pursuant to subsection 3 of Section 11 of the Terms and Conditions of the Bonds of the January 26, 2000 Offering Circular, the Republic agreed to waive any claim of immunity, including, but not limited to, sovereign immunity.

99. Pursuant to subsection 1 of Section 8 of the Terms and Conditions of the Bonds of the January 26, 2000 Offering Circular, the following, *inter alia*, are defined as "Events of Default:"

> (a) Non-Payment: the Republic fails to pay any principal of any of the Bonds when due and payable or fails to pay any interest on any of the Bonds when due and payable and such failure continues for a period of 30 days; or
>
> ....
>
> (d) Moratorium: a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic of Argentina shall be proposed or declared by the Republic of Argentina...

100. Section 8 of the Terms and Conditions of the Bonds of the January 26, 2000 Offering Circular further provides that following either of the foregoing Events of Default, the holder of any Bond, *i.e.*, plaintiff VR, may give the Republic's Principal Paying Agent, Deutsche Bank Aktiengesellschaft, written notice and declare "such Bond to be immediately due and payable together with accrued interest thereon, as of the date on which such notice is received by the Principal Paying Agent."

101. In or about December 2001, the Republic declared a moratorium on the payment of principal and interest with respect to all of its foreign debt, including all payments due under the January 26, 2000 Bond and has since failed to pay any interest on the January 26, 2000 Bond when due and payable, and such failure continued for a period of 30 days.

102.   By reason of the foregoing, there has been an Event of Default on the January 26, 2000 Bond, and the Republic is in breach of its obligations under the January 26, 2000 Offering Circular.

103.   In accordance with Section 8 of the Terms and Conditions of the Bonds of the January 26, 2000 Offering Circular, by letter dated December 28, 2011, plaintiff VR provided the Republic's Principal Paying Agent with written notice that it was declaring the principal and interest on the January 26, 2000 Bond to be due and payable immediately.

104.   Notwithstanding, since December 2001, the Republic has failed to make any payment of principal or interest on the January 26, 2000 Bond held by VR.

105.   By reason of the foregoing, the Republic has breached its contractual obligations to plaintiff VR and is liable for damages in an amount to be determined at trial, plus interest.

## COUNT NINE

106.   Plaintiff repeats and realleges each of the allegations contained in paragraphs 1, 17, and 22-25 as if set forth here at length.

107.   As set forth above, VR acquired a certain bond issued by the Republic pursuant to the November 13, 1996 Prospectus (the "November 13, 1996 Bond") and continues to own that bond.

108.   Pursuant to subsection 4 of Section 12 of the Terms and Conditions of the Bonds of the November 13, 1996 Prospectus, the Republic agreed to waive any claim of immunity, including, but not limited to, sovereign immunity.

109.   Pursuant to subsection 1 of Section 9 of the Terms and Conditions of the Bonds of the November 13, 1996 Prospectus, the following, *inter alia*, are defined as "Events of Default:"

> (a) Non-Payment: the Republic fails to pay any principal of any of the Bonds when due and payable or fails to pay any interest on any of the Bonds when due and payable and such failure continues for a period of 30 days; or
>
> ....
>
> (d) Moratorium: a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic of Argentina shall be proposed or declared by the Republic of Argentina...

110.   Section 9 of the Terms and Conditions of the Bonds of the November 13, 1996 Prospectus further provides that following either of the foregoing Events of Default, the holder of any Bond, *i.e.*, plaintiff VR, may give the Republic's Paying Agent, Bank of Luxembourg S.A., written notice and declare "such Bond to be immediately due and payable together with accrued interest thereon, as of the date on which such notice is received by the Paying Agent."

111.   In or about December 2001, the Republic declared a moratorium on the payment of principal and interest with respect to all of its foreign debt, including all payments due under the November 13, 1996 Bond and has since failed to pay any interest on the November 13, 1996 Bond when due and payable, and such failure continued for a period of 30 days.

112.   By reason of the foregoing, there has been an Event of Default on the November 13, 1996 Bond, and the Republic is in breach of its obligations under the November 13, 1996 Prospectus.

113.   In accordance with Section 9 of the Terms and Conditions of the Bonds of the November 13, 1996 Prospectus, by letter dated December 28, 2011, plaintiff VR provided the Republic's Paying Agent with written notice that it was declaring the principal and interest on the November 13, 1996 Bond to be due and payable immediately.

114.   Notwithstanding, since December 2001, the Republic has failed to make any payment of principal or interest on the November 13, 1996 Bond held by VR.

115.   By reason of the foregoing, the Republic has breached its contractual obligations to plaintiff VR and is liable for damages in an amount to be determined at trial, plus interest.

## COUNT TEN

116.   Plaintiff repeats and realleges each of the allegations contained in paragraphs 1, 18, and 22-25 as if set forth here at length.

117.   As set forth above, VR acquired a certain bond issued by the Republic pursuant to the April 10, 1996 Prospectus (the "April 10, 1996 Bond") and continues to own that bond.

118.   Pursuant to subsection 4 of Section 12 of the Terms and Conditions of the Bonds of the April 10, 1996 Prospectus, the Republic agreed to waive any claim of immunity, including, but not limited to, sovereign immunity.

119.   Pursuant to subsection 1 of Section 9 of the Terms and Conditions of the Bonds of the April 10, 1996 Prospectus, the following, *inter alia*, are defined as "Events of Default:"

> (a) Non-Payment: the Republic fails to pay any principal of any of the Bonds when due and payable or fails to pay any interest on any of the Bonds when due and payable and such failure continues for a period of 30 days; or

....

> (d) Moratorium: a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic of Argentina shall be proposed or declared by the Republic of Argentina...

120. Section 9 of the Terms and Conditions of the Bonds of the April 10, 1996 Prospectus further provides that following either of the foregoing Events of Default, the holder of any Bond, *i.e.*, plaintiff VR, may give the Republic's Paying Agent, Bank of Luxembourg S.A., written notice and declare "such Bond to be immediately due and payable together with accrued interest thereon, as of the date on which such notice is received by the Paying Agent."

121. In or about December 2001, the Republic declared a moratorium on the payment of principal and interest with respect to all of its foreign debt, including all payments due under the April 10, 1996 Bond and has since failed to pay any interest on the April 10, 1996 Bond when due and payable, and such failure continued for a period of 30 days.

122. By reason of the foregoing, there has been an Event of Default on the April 10, 1996 Bond, and the Republic is in breach of its obligations under the April 10, 1996 Prospectus.

123. In accordance with Section 9 of the Terms and Conditions of the Bonds of the April 10, 1996 Prospectus, by letter dated December 28, 2011, plaintiff VR provided the Republic's Paying Agent with written notice that it was declaring the principal and interest on the April 10, 1996 Bond to be due and payable immediately.

124. Notwithstanding, since December 2001, the Republic has failed to make any payment of principal or interest on the April 10, 1996 Bond held by VR.

125. By reason of the foregoing, the Republic has breached its contractual obligations to plaintiff VR and is liable for damages in an amount to be determined at trial, plus interest.

## COUNT ELEVEN

126. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1, 19, and 22-25 as if set forth here at length.

127. As set forth above, VR acquired a certain bond issued by the Republic pursuant to the September 7, 2000 Offering Circular (the "September 7, 2000 Bond") and continues to own that bond.

128. Pursuant to subsection 3 of Section 11 of the Terms and Conditions of the Bonds of the September 7, 2000 Offering Circular, the Republic agreed to waive any claim of immunity, including, but not limited to, sovereign immunity.

129.  Pursuant to subsection 1 of Section 8 of the Terms and Conditions of the Bonds of the September 7, 2000 Offering Circular, the following, *inter alia*, are defined as "Events of Default:"

> (a) Non-Payment: the Republic fails to pay any principal of any of the Bonds when due and payable or fails to pay any interest on any of the Bonds when due and payable and such failure continues for a period of 30 days; or
>
> ....
>
> (d) Moratorium: a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic of Argentina shall be proposed or declared by the Republic of Argentina...

130.  Section 8 of the Terms and Conditions of the Bonds of the September 7, 2000 Offering Circular further provides that following either of the foregoing Events of Default, the holder of any Bond, *i.e.*, plaintiff VR, may give the Republic's Principal Paying Agent, Deutsche Bank Aktiengesellschaft, written notice and declare "such Bond to be immediately due and payable together with accrued interest thereon, as of the date on which such notice is received by the Principal Paying Agent."

131.  In or about December 2001, the Republic declared a moratorium on the payment of principal and interest with respect to all of its foreign debt, including all payments due under the September 7, 2000 Bond and has since failed to pay any interest on the September 7, 2000 Bond when due and payable, and such failure continued for a period of 30 days.

132.  By reason of the foregoing, there has been an Event of Default on the September 7, 2000 Bond, and the Republic is in breach of its obligations under the September 7, 2000 Offering Circular.

133.  In accordance with Section 8 of the Terms and Conditions of the Bonds of the September 7, 2000 Offering Circular, by letter dated December 28, 2011, plaintiff VR provided the Republic's Principal Paying Agent with written notice that it was declaring the principal and interest on the September 7, 2000 Bond to be due and payable immediately.

134.  Notwithstanding, since December 2001, the Republic has failed to make any payment of principal or interest on the September 7, 2000 Bond held by VR.

135.  By reason of the foregoing, the Republic has breached its contractual obligations to plaintiff VR and is liable for damages in an amount to be determined at trial, plus interest.

## COUNT TWELVE

136.  Plaintiff repeats and realleges each of the allegations contained in paragraphs 1, 20, and 22-25 as if set forth here at length.

137.   As set forth above, VR acquired a certain bond issued by the Republic pursuant to the November 1998 Subscription Agreement (the "November 1998 Bond") and continues to own that bond.

138.   Pursuant to subsection 3 of Section 13 of the Terms and Conditions of the November 1998 Bond, the Republic agreed to waive any claim of immunity, including, but not limited to, sovereign immunity.

139.   Pursuant to subsection 1 of Section 10 of the Terms and Conditions of the November 1998 Bond, the following, *inter alia*, are defined as "Events of Default:"

   (a) Non-Payment: the Republic fails to pay any principal of any of the Bonds when due and payable or fails to pay any interest on any of the Bonds when due and payable and such failure continues for a period of 30 days; or

   ....

   (d) Moratorium: a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic of Argentina shall be proposed or declared by the Republic of Argentina...

140.   Section 10 of the Terms and Conditions of the November 1998 Bond further provides that following either of the foregoing Events of Default, the holder of any Bond, *i.e.*, plaintiff VR, may give the Republic's Principal Paying Agent, Morgan Stanley Bank AG, written notice and declare "such Bond to be immediately due and payable together with accrued interest thereon, as of the date on which such notice is received by the Principal Paying Agent."

141.   In or about December 2001, the Republic declared a moratorium on the payment of principal and interest with respect to all of its foreign debt, including all payments due under the November 1998 Bond and has since failed to pay any interest on the November 1998 Bond when due and payable, and such failure continued for a period of 30 days.

142.   By reason of the foregoing, there has been an Event of Default on the November 1998 Bond, and the Republic is in breach of its obligations under the November 1998 Subscription Agreement.

143.   In accordance with Section 8 of the Terms and Conditions of the November 1998 Bond, by letter dated December 28, 2011, plaintiff VR provided the Republic's Principal Paying Agent with written notice that it was declaring the principal and interest on the November 1998 Bond to be due and payable immediately.

144.   Notwithstanding, since December 2001, the Republic has failed to make any payment of principal or interest on November 1998 Bond held by VR.

145. By reason of the foregoing, the Republic has breached its contractual obligations to plaintiff VR and is liable for damages in an amount to be determined at trial, plus interest.

## COUNT THIRTEEN

146. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1, 21, and 22-25 as if set forth here at length.

147. As set forth above, VR acquired a certain bond issued by the Republic pursuant to the October 30, 1997 Offering Circular (the "October 30, 1997 Bond") and continues to own that bond.

148. Pursuant to subsection 4 of Section 13 of the Terms and Conditions of the Bonds of the October 30, 1997 Offering Circular, the Republic agreed to waive any claim of immunity, including, but not limited to, sovereign immunity.

149. Pursuant to subsection 1 of Section 10 of the Terms and Conditions of the Bonds of the October 30, 1997 Offering Circular, the following, *inter alia*, are defined as "Events of Default:"

> (a) Non-Payment: the Republic fails to pay any principal of any of the Bonds when due and payable or fails to pay any interest on any of the Bonds when due and payable and such failure continues for a period of 30 days; or
>
> ....
>
> (d) Moratorium: a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic shall be proposed or declared by the Republic...

150. Section 10 of the Terms and Conditions of the Bonds of the October 30, 1997 Offering Circular further provides that following either of the foregoing Events of Default, the holder of any Bond, *i.e.*, plaintiff VR, may give the Republic's Principal Paying Agent, ABN AMRO Bank (Deutschland) AG, written notice and declare "such Bond to be immediately due and payable together with accrued interest thereon, as of the date on which such notice is received by the Principal Paying Agent."

151. In or about December 2001, the Republic declared a moratorium on the payment of principal and interest with respect to all of its foreign debt, including all payments due under the October 30, 1997 Bond and has since failed to pay any interest on the October 30, 1997 Bond when due and payable, and such failure continued for a period of 30 days.

152. By reason of the foregoing, there has been an Event of Default on the October 30, 1997 Bond, and the Republic is in breach of its obligations under the October 30, 1997 Offering Circular.

153.   In accordance with Section 10 of the Terms and Conditions of the Bonds of the October 30, 1997 Offering Circular, by letter dated March 26, 2012, plaintiff VR provided the Republic's Principal Paying Agent with written notice that it was declaring the principal and interest on the October 30, 1997 Bond to be due and payable immediately.

154.   Notwithstanding, since December 2001, the Republic has failed to make any payment of principal or interest on the October 30, 1997 Bond held by VR.

155.   By reason of the foregoing, the Republic has breached its contractual obligations to plaintiff VR and is liable for damages in an amount to be determined at trial, plus interest.

## COUNT FOURTEEN

156.   Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 25 as if set forth here at length.

157.   Pursuant to ¶ 1(c) of the FAA, Argentina provided that its bonds issued pursuant to the FAA would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank <u>pari passu</u> and without preference among themselves . . . ." and that "[t]he payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness...."

158.   The FAA defines "External Indebtedness" to mean "obligations (other than the Securities) for borrowed money, or evidenced by securities, debentures, notes or other similar instruments, denominated or payable, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic ...." FAA at 16.

159.   Pursuant to ¶ (j) of the June 1996 Subscription Agreement, Argentina provided that its bonds would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Borrower, . . . [and] will rank pari passu in priority of payment with all other unsecured and unsubordinated External Indebtedness . . ."

160.   Pursuant to § 7 ¶ (1) of the Terms and Conditions of the Bonds annexed to the June 1996 Subscription Agreement, Argentina provided that its bonds would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Borrower and shall at all times rank pari passu and without any preference among themselves. The payment of obligations of the Borrower under the Bonds and Coupons shall . . . at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness."

161.   Section 7 ¶ (1) of the Terms and Conditions of the Bonds annexed to the June 1996 Subscription Agreement, defines "External Indebtedness" to mean "obligations other than the Bonds for borrowed money or evidenced by bonds, debentures, notes or other similar instruments denominated or payable or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic of Argentina . . . ."

162. Pursuant to § 9 ¶ (1) of the Terms and Conditions of the Bonds annexed to the July 14, 1998 Offering Circular, Argentina provided that its bonds would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank *pari passu* and without any preference among themselves. The payment of obligations of the Republic under the Bonds and Coupons shall . . . at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness."

163. Paragraph 4 of § 9 of the Terms and Conditions of the Bonds annexed to the July 14, 1998 Offering Circular defines "External Indebtedness" to mean "obligations other than the Bonds for borrowed money or evidenced by bonds, debentures, notes or other similar instruments denominated or payable or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic of Argentina . . . ."

164. Pursuant to § 8 ¶ (1) of the Terms and Conditions of the Bonds annexed to the February 26, 1999 Offering Circular, Argentina provided that its bonds would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank *pari passu* and without any preference among themselves. The payment of obligations of the Republic under the Bonds and Coupons shall . . . at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness."

165. Paragraph 4 of § 8 of the Terms and Conditions of the Bonds annexed to the February 26, 1999 Offering Circular defines "External Indebtedness" to mean "obligations, other than the Bonds, for borrowed money or evidenced by bonds, debentures, notes or other similar instruments denominated or payable or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic of Argentina . . . ."

166. Pursuant to § 8 ¶ (1) of the Terms and Conditions of the Bonds annexed to the April 21, 1999 Offering Circular, Argentina provided that its bonds would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without any preference among themselves. The payment obligations of the Republic under the Bonds and Coupons shall . . . at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness."

167. Paragraph 4 of § 8 of the Terms and Conditions of the Bonds annexed to the April 21, 1999 Offering Circular defines "External Indebtedness" to mean "obligations, other than the Bonds, for borrowed money or evidenced by bonds, debentures, notes or other similar instruments denominated or payable, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic. . . ."

168. Pursuant to § 7 ¶ (1) of the Terms and Conditions of the Bonds annexed to the April 26, 1999 Offering Circular, Argentina provided that its bonds would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without any preference among themselves. The payment obligations of the Republic under the Bonds shall . . . at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness."

169. Paragraph 4 of § 7 of the Terms and Conditions of the Bonds annexed to the April 26, 1999 Offering Circular defines "External Indebtedness" to mean "obligations, other than the Bonds, for borrowed money or evidenced by bonds, debentures, notes or other similar instruments denominated or payable, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic. . . ."

170. Pursuant to § 7 ¶ (1) of the Terms and Conditions of the Bonds annexed to the June 4, 1999 Offering Circular, Argentina provided that its bonds would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without any preference among themselves. The payment obligations of the Republic under the Bonds shall . . . at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness."

171. Paragraph 4 of § 7 of the Terms and Conditions of the Bonds annexed to the June 4, 1999 Offering Circular defines "External Indebtedness" to mean "obligations, other than the Bonds, for borrowed money or evidenced by bonds, debentures, notes or other similar instruments denominated or payable, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic. . . ."

172. Pursuant to § 7 ¶ (1) of the Terms and Conditions of the Bonds annexed to the January 26, 2000 Offering Circular, Argentina provided that its bonds would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without any preference among themselves. The payment obligations of the Republic under the Bonds shall . . . at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness."

173. Paragraph 4 of § 7 of the Terms and Conditions of the Bonds annexed to the January 26, 2000 Offering Circular defines "External Indebtedness" to mean "obligations, other than the Bonds, for borrowed money or evidenced by bonds, debentures, bonds or similar instruments denominated or payable, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic. . . ."

174.   Pursuant to § 8 ¶ (1) of the Terms and Conditions of the Bonds annexed to the November 13, 1996 Prospectus, Argentina provided "(1) Die Schuldverschreibungen und Zinsscheine stellen vorbehaltlich der Absiitze (2) und (3) unmittelbare, unbedingte, unbesicherte und nicht nachrangige Verpflichtungen der Repubfik dar, die untereinander stets in gleichem Rang stehen. Die Zahlungsverpflichtungen der Republik aus den Schuldversctireibungen und Zinsscheinen werden vorbehaltlich der Absiitze.(2) und 131 stets min-destens im gleichen Rang stehen mit allen ihren sonstigen gegenwartigen und zukiinftigen unbe-sicherten und nicht nachrangigen Auslandsverbindlichkeiten (wie nachstehend definiert)."

175.   Paragraph 4 of § 8 of the Terms and Conditions of the Bonds annexed to the November 13, 1996 Prospectus defines "Auslandsverbindlichkeit" to mean "aile Verpflichtungen, mit Ausnahme der Schuldverschreibungen, aus aufgenommenen Geldem oder Verpflichturigen, die in Schuldverschreibungen oder ahnlichen Wertpieren verbrieft sind und auf eine andere Wah rung als die gesetzliche Wahrung der Republik Iau-ten oder bestimmungsgemiifl. oder nach Wahl des Jnhabers in einer anderen Wahrung als der gesetzlichen Wahrung der Republik zahlbar sind, wobei jedoch eine ,Inlandische Fremdwahrungs-verbindlichkeit" keine Auslandsverbindlichkeit begrundet."

176.   Pursuant to § 8 ¶ (1) of the Terms and Conditions of the Bonds annexed to the April 10, 1996 Prospectus, Argentina provided "Die Schuldverschreibungen und Zinsscheine stellen vorbehaltlich der AbsiHze (2) und (3) un-mittelbare, unbedingte, unbesicherte und nicht nachrangige Verpflichtungen der Republik dar, die untereinander stets in gleichem Rang stehen. Die Zahlungsverpflichtungen der Republik aus den Schuldverschreibungen und Zinsscheinen werden vorbehaltlich der Absatze (2) und (3) stets min-destens im gleichen Rang stehen mit allen ihren sonstigen gegenwartigen und zukunftigen unbe-sicherten und nicht nachrangigen Auslandsverbindlichkeiten (wie nachstehend definiert)."

177.   Paragraph 4 of § 8 of the Terms and Conditions of the Bonds annexed to the April 10, 1996 Prospectus defines "Auslandsverbindlichkei" to mean "aile Verpflichtungen, mit Ausnahme der Schuldverschreibungen, aus aufgenommenen Geldern oder Verpflichtungen, die in Schuldverschreibungen oder ahnlichen Wertpapieren verbrieft sind und auf eine andere Wahrung als die gesetzliche Wahrung der Republik.lau-ten oder bestimmungsgemaB oder nach Wahl des Inhabers in einer anderen Wahrung als der gesetzlichen Wiihrung der Republik zahlbar sind, wobei jedoch eine ,,lnlandische Fremdwiihrungs-verbindlichkeit" keine Auslandsverbindlichkeit begrundet."

178.   Pursuant to § 7 ¶ (1) of the Terms and Conditions of the Bonds annexed to the September 7, 2000 Offering Circular, Argentina provided that its bonds would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without any preference among themselves. The payment obligations of the Republic under the Bonds shall . . . at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness."

179. Paragraph 4 of § 7 of the Terms and Conditions of the Bonds annexed to the September 7, 2000 Offering Circular defines "External Indebtedness" to mean "obligations, other than the Bonds, for borrowed money or evidenced by bonds, debentures, bonds or other similar instruments denominated or payable, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic. . . ."

180. Pursuant to ¶ (j) of the November 1998 Subscription Agreement, Argentina provided that its bonds would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic . . . [and] will rank *pari passu* in priority of payment with all other unsecured and unsubordinated External Indebtedness . . ."

181. Pursuant to § 9 ¶ (1) of the Terms and Conditions of the Bonds annexed to the November 1998 Subscription Agreement, Argentina provided that its bonds would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank *pari passu* and without any preference among themselves. The payment obligations of the Republic under the Bonds shall . . . at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness."

182. Section 9 ¶ (4) of the Terms and Conditions of the Bonds annexed to the November 1998 Subscription Agreement, defines "External Indebtedness" to mean "obligations, other than the Bonds, for borrowed money or evidenced by bonds, debentures, notes or other similar instruments denominated or payable, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic . . . ."

183. Pursuant to § 9 ¶ (1) of the Terms and Conditions of the Bonds annexed to the October 30, 1997 Offering Circular, Argentina provided that its bonds would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without any preference among themselves. The payment obligations of the Republic under the Bonds shall . . . at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness."

184. Section 9 ¶ (4) of the Terms and Conditions of the Bonds annexed to the October 30, 1997 Offering Circular, defines "External Indebtedness" to mean "obligations (other than the Bonds) for borrowed money or evidenced by bonds, debentures, notes or other similar instruments denominated or payable, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic . . . ."

185. Argentina, therefore, may not make any payment of its External Indebtedness without also making a ratable payment at the same time to VR.

186. In 2005, Argentina restructured its debt by offering a bond exchange to all holders of non-performing external debt (the "2005 Exchange").

187. Holders of approximately 25% of Argentina's external debt did not participate in the 2005 Exchange ("Non-tendering Bondholders).

188. VR did not participate in the 2005 Exchange.

189. Bondholders who participated in the 2005 Exchange received bonds scheduled to pay semi-annual interest (the "2005 Bonds").

190. The first interest payment on the 2005 Bonds was due and paid in 2005.

191. Argentina has paid all subsequent interest due on the 2005 Bonds to date.

192. Upon information and belief, Argentina intends to continue paying interest on all 2005 Bonds as it becomes due.

193. To facilitate the 2005 Bond Exchange, the Senate and Chamber of Deputies of the Argentine Nation passed Law 26,017 ("the Lock Law") on February 9, 2005. A copy of Law 26,017 and a certified translation are annexed hereto as Exhibit Q.

194. In its January 28, 2010 Prospectus, Argentina explained the purpose and effect of the Lock Law as follows:

> In an effort to reassure tendering Bondholders and increase the level of participation on the 2005 debt exchange, Congress subsequently passed Law 26,017, known as the "Lock Law." The Lock Law prohibited the Executive Branch from reopening the Debt Exchange without Congressional approval **and also prohibited any type of settlement involving untendered securities that were eligible to participate in the 2005 Debt Exchange....**

(Emphasis supplied.)

195. The assurances to tendering bondholders provided by Law 26,017 facilitated Argentina's completion of the 2005 Bond Exchange.

196. Article 1 of Law 26,017 provided that Bonds not tendered in the 2005 Exchange would be subject to the following provisions:

> Article 2 – The national Executive Power may not, with respect to the bonds referred to in Article 1 of this law, reopen the swap process established in the aforementioned Decree No. 1735/04.

> Article 3 - The national State shall be prohibited from conducting any type of in-court, out-of-court or private settlement with respect to the bonds referred to in Article 1 of this law.

> Article 4 - The national Executive Power must – within the framework of the terms of the issuance of the respective

bonds, and the applicable laws and regulations in the corresponding jurisdictions – order the pertinent administrative acts and fulfill the necessary procedures to remove the bonds referred to in the preceding article from listing on all domestic and foreign securities markets and exchanges.

197.  Together, the Lock Law and the 2005 Exchange created, in violation of the Equal Treatment Clause, two classes of bondholders: a higher rank that participated in the 2005 Exchange and would thereafter receive the interest and principal payments due them, and a lower rank that was legislatively consigned to receive nothing.

198.  In 2009, in preparation for another bond exchange in 2010, the Senate and Chamber of Deputies of the Argentine Nation passed Law No. 26,547 which, among other things, suspended the Lock Law for purposes of the 2010 Exchange. A copy of Law 26,547 and a certified translation are annexed hereto as Exhibit R.

199.  Law 26,547 provided:

> Article 1. The operation of Articles 2, 3, and 4 of Law No. 26,017 is suspended until 31 December 2010, or until the National Executive Branch, through the Ministry of Economy and Public Finance, declares that the process of restructuring the public instruments covered by said law is completed, whichever occurs first.

> Article 3. The financial terms and conditions that may be offered may not be equal to or better than those offered to creditors in the debt restructuring established by Decree No. 1735/04.

> Article 5. It is forbidden to offer to the holders of public debt that have brought judicial, administrative, or arbitration proceedings or any other type of proceeding treatment more favorable than the treatment afforded to holders who did not bring such proceedings.

200.  The Bonds issued in the 2010 Bond Exchange (the "2010 Bonds") are scheduled to pay semi-annual interest, following a first payment on December 2, 2010.

201.  Law 26, 547 in violation of the Equal Treatment Clause, created a second class of preferred bondholders alongside the class created in the 2005 Exchange, and also legislatively repudiated this Court's judgments.

202.  Upon information and belief, Argentina intends to pay interest on all 2010 Bonds as it becomes due.

203.  VR did not participate in the 2010 Exchange.

204.   Through the passage of Law 26,017, Argentina issued a new series of bonds with payment obligations that rank higher than those held by VR and other nontendering Bondholders in violation of the Equal Treatment Provision.

205.   Upon information and belief, Argentina will continue to pay nothing to VR.

206.   Through the passage of Law 26,547 Argentina issued a new series of bonds with payment obligations that rank higher than those held by VR and other nontendering Bondholders in violation of the Equal Treatment Provision.

207.   The bonds issued in the Exchanges are External Indebtedness and their issuance violated the Equal Treatment Provision.

208.   Argentina's past payment of interest to 2005 Bondholders, while paying nothing to VR and other non-tendering bondholders, violated the Equal Treatment Provision.

209.   Argentina's continuing payments of interest to 2005 Bondholders is a continuing violation of the Equal Treatment Provision.

210.   Argentina's payment of the scheduled interest to 2010 Bondholders is a continuing violation of the Equal Treatment Provision.

211.   VR has suffered irreparable injury from Argentina's violation of the Equal Treatment Provision and will continue to suffer such injury unless the Court specifically enforces that Provision with a mandatory injunction requiring Argentina to pay VR ratably whenever it pays interest to 2005 or 2010 Bondholders.

212.   Remedies available at law are inadequate to compensate for such injury.

213.   VR has performed its part of the contract with Argentina.

214.   Argentina is capable of performing its obligations pursuant to the Equal Treatment Provision.

215.   The balance of the equities tips toward the issuance of an injunction.

216.   The public interest would not be disserved by a permanent injunction.

WHEREFORE, Plaintiff VR demands judgment as follows:

(i)     On Count One, awarding Plaintiff damages against the Republic in an amount to be determined at trial, plus interest;

(ii)    On Count Two, awarding Plaintiff damages against the Republic in an amount to be determined at trial, plus interest;

(iii)   On Count Three, awarding Plaintiff damages against the Republic in an amount to be determined at trial, plus interest;

(iv)    On Count Four, awarding Plaintiff damages against the Republic in an amount to be determined at trial, plus interest;

(v)    On Count Five, awarding Plaintiff damages against the Republic in an amount to be determined at trial, plus interest;

(vi)    On Count Six, awarding Plaintiff damages against the Republic in an amount to be determined at trial, plus interest;

(vii)    On Count Seven, awarding Plaintiff damages against the Republic in an amount to be determined at trial, plus interest;

(viii)    On Count Eight, awarding Plaintiff damages against the Republic in an amount to be determined at trial, plus interest;

(ix)    On Count Nine, awarding Plaintiff damages against the Republic in an amount to be determined at trial, plus interest;

(x)    On Count Ten, awarding Plaintiff damages against the Republic in an amount to be determined at trial, plus interest;

(xi)    On Count Eleven, awarding Plaintiff damages against the Republic in an amount to be determined at trial, plus interest;

(xii)    On Count Twelve, awarding Plaintiff damages against the Republic in an amount to be determined at trial, plus interest;

(xiii)    On Count Thirteen, awarding Plaintiff damages against the Republic in an amount to be determined at trial, plus interest;

(xiv)    On Count Fourteen, issuing an Order specifically enforcing the Equal Treatment Provision against the Republic of Argentina; and

(xv)    Awarding Plaintiff its costs, prejudgment interest, attorneys' fees and such other and additional relief as the Court deems just and proper.

Dated: New York, New York
August 10, 2012

Duane Morris LLP

By: _____

Anthony J. Costantini (AC6633)
E-mail:ajcostantini@duanemorris.com
Suzan Jo (SJ1974)
E-mail:sjo@duanemorris.com
Mary C. Pennisi (MP0417)
Email: mcpennisi@duanemorris.com
1540 Broadway
New York, NY 10036-4086
Telephone: +1 212 692 1000
Fax: +1 212 692 1020

Attorneys for Plaintiff
VR Global Partners, LP